UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

RODNEY MANIGAULT,

                    Plaintiff,

    -against-                              1:23-CV-264 (LEK/CFH)

BRENDA SPRY, *et al.*,

                    Defendants.

---

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I.    INTRODUCTION

On January 25, 2023, Plaintiff Rodney Manigault filed this pro se civil rights action in state court. <u>See</u> Dkt. No. 2 ("Complaint"). In the Complaint, Plaintiff names seventeen defendants including fellow employees of Montefiore New Rochelle Hospital and representatives of his union, 1199SEIU United Healthcare Workers East ("Union"). <u>See id.</u> at 2. The case was removed to federal court on February 27, 2023. <u>See</u> Dkt. No. 1. Following removal, two groups of defendants named in the action filed motions to dismiss. <u>See</u> Dkt. Nos. 16-1 ("Hospital Motion"), 18 ("Union Motion"). The Hospital Motion was filed by Emy Valez, Edwin Rivera, Paola Rosa, and Melissa Monroy (collectively, "Hospital Defendants"). The Union Motion was filed by Brenda Spry, Hazel Green, and Maxine Hewitt (collectively, "Union Defendants"). Plaintiff has not filed a response to either the Hospital Motion or the Union Motion.

For the reasons that follow, the Hospital Motion and the Union Motion are granted.

### II.    BACKGROUND

The following relevant facts are set forth as alleged in the Complaint.

Plaintiff alleges that Defendants are conspiring to terminate his employment "due [to] malic[e], spitefully to bias, favoritism, [and prejudicial] actions towards" him. Compl. at 6. He states that Defendants discriminated against him and "denied [him] accommodations [and] promotions" as well as "provok[ing him] repeatedly to engage in verbal conflict on the job." Id. This was "accompanied with progressive punishment," including "false written warnings and write-ups." Id. When Plaintiff filed reports and grievances, Defendants refused to acknowledge or correct any of the reported issues. See id.

Plaintiff asserts that the Union Defendants engaged in a breach of contract by "refusing to provide protection to its union member as they are supposed to do as per the union contract" and that their refusal did "cause harm, injury, pain, [and losses]." Id. at 1.

Plaintiff alleges that the Hospital Defendants showed "bias and prejudice by violating their contract to claimant/plaintiff by denial of accommodations, ill treatment by means of falsifying reports, and statements attacking claimant due to claimant's religion as a Muslim, claimant's hairstyle of dreadlocks, [and] claimant's head [wrap and turban]." Id. He also states he was denied breaks for prayers. See id.; see also id. at 7 ("[Plaintiff] was harassed due to being Muslim, was not accommodated for breaks, prayer or injuries."). Plaintiff notes the open use of racial slurs in the workplace and states that management did nothing to punish those who used them or to prevent their use in the future. See id. at 6.

Plaintiff similarly alleges multiple interferences with the terms of his employment, including "denial of days off, denial of breaks . . . denial of [his] rights as a senior employee, tampering with [his] seniority and social security time . . . [and] unlawful demotion of title and status." Id. at 1.

Plaintiff also alleges numerous torts occurred during his employment. He says that he was subject to "threats of physical bodily harm, threats of gun violence toward [him], [and] workplace violence." Id. Plaintiff includes allegations related to violent attacks involving other employees, including use of a kitchen knife during an intense argument that was "reported but covered up by management." Id. at 6.

He also states that his medical information and the medical information of his family was revealed in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). See id. at 1. Specifically, hospital employee Alicia Monteque ("Monteque") "call[ed] out the private medical information of [Plaintiff's] family medical history in an angry rant while on duty out loud, then aggressively began to attack [Plaintiff] verbally, placing [him] in imminent danger by confronting [him], threatening [him], [and] attempting to physically assault [him]. Id. at 6. When Plaintiff complained to management, "nothing was done to cure the matter." Id.

Plaintiff alleges that these actions violated "hate crime laws, New York State workplace violence laws, Federal labor laws, Human Rights laws/rules/regulations, and contract law." Id. Specifically, Defendants and others not named in the Complaint violated "the following laws, codes, ordinances, [statutes], regulations, policies, [and] contracts." Id. at 7.[1] As a result of these

---

[1] Plaintiff then lists the following statutes and regulations in his Complaint: U.S. Const. amend. V; U.S. Const. amend. VI; 5 U.S.C. § 3331; Federal Employee Compensation Act, 5 U.S.C. §§ 8101–8152; 18 U.S.C. § 47; 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 1001; 18 U.S.C. § 1028; 18 U.S.C. § 1038; 18 U.S.C. § 1341; 28 U.S.C. § 534; 1968 Civil Rights Act, 25 U.S.C. §§ 1301–1304; 28 U.S.C. § 1746; Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219; Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461; 42 U.S.C. § 408; 42 U.S.C. § 1307(a); 42 U.S.C. § 1383a; 42 U.S.C. § 1983; Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–2000bb-4; Fair Housing Act, 42 U.S.C. § 3617; 25 C.F.R. § 11.406; 28 C.F.R. § 36.302(c); New York Executive Laws §§ 290, 292, and 296; New York Penal Laws §§ 240.20, 240.30, 485.00, 485.05; Hate Crime Local Law 46; Senate Bill S4615A (enacted as N.Y. Gen. Mun. Law § 99-x); and state laws regarding contracts, fraud, and intentional infliction of emotional distress. Plaintiff also includes Montefiore Hospital Policy Number VI-6 in his list. Additionally, Plaintiff lists several case citations and references to rules

violations, Plaintiff says he "has been under a very large amount of stress and aggravation avoiding these malicious attempts of conflict." Compl. at 6.

To support his claims, Plaintiff attached multiple documents that the Court will construe as part of the Complaint. These documents include memos written by Plaintiff describing meetings with supervisors and union representatives, id. at 15, 18, 24, 31–32; records of written and verbal warnings, id. at 16, 19, 27; records of coaching received by Plaintiff, id. at 17; letters and petitions written regarding allegedly discriminatory actions in the workplace, id. at 21–22, 23, 25–26; a description of Plaintiff's employment position, id. at 30; and a record of Plaintiff's employment generated by the Social Security Administration, id. at 33–40.

On January 25, 2023, Plaintiff filed his Complaint in Supreme Court of the State of New York, Ulster County. See id. at 1. The case was removed to federal court on February 27, 2023. See Dkt. No. 1. After filing multiple extensions for time to respond, the Union Defendants and the Hospital Defendants each filed a motion to dismiss for failure to state a claim: both motions were filed on April 4, 2023. Hosp. Mot.; Union Mot. Plaintiff did not file a response to either Motion but has instead filed a document titled "Writ of Discovery," which restated many of the allegations included in the Complaint and included a fee schedule for his appearances in court. Dkt. No. 26 ("Writ").[2]

---

of evidence but, since these citations do not refer to a particular legal right Plaintiff alleges is being infringed by Defendants, the Court declines to discuss them.

[2] Plaintiff also appears to allege improper service of the Motions to Dismiss in the Writ. See Writ at 16–21. To the extent this document constitutes an answer to the Hospital and Union Motions by arguing that the documents were improperly served, Plaintiff is directed to review the affidavits of service filed for each Motion to Dismiss. See Dkt. No. 19 (providing an affidavit in support of service of the Union Motion); No. 20 (providing an affidavit in support of service of the Hospital Motion). Under Federal Rule of Civil Procedure 5(b)(2)(C), service may be completed by mailing documents to a "person's last known address." Plaintiff includes envelopes addressed to 22 Maple Avenue in Ellenville, New York. See Writ at 16–21. Given that

### III.    STANDARDS OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. In considering whether a plaintiff has alleged enough in their complaint, a court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal citations omitted).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

this is the address Plaintiff has on file with the Clerk of the Court, the Court is unable to say that Plaintiff was improperly served with these documents.

accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than

the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not

demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

Where plaintiffs represent themselves pro se, courts construe their pleadings liberally—

"particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197,

200 (2d Cir. 2004). This is because a pro se litigant's complaint, "however inartfully pleaded,"

should not be scrutinized to the same degree as a formal pleading drafted by an attorney.

Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a pro se complaint must still "state a

plausible claim for relief." Meadows v. U.S., Inc., 963 F.3d 240, 243 (2d Cir. 2020).

Generally, a notice of dismissal by court order operates as an adjudication on the merits.

See Fed. R. Civ. P. 41(b). Even so, a court should "freely give leave [to amend a complaint]

when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, the Court is not required to grant

leave to amend where such amendment would be futile, or, in other words, when any amendment

would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Ryle v.

Rehrig Pac. Co., No. 19-CV-1478, 2020 WL 6196144, at *5 (N.D.N.Y. Oct. 22, 2020) (citing

Byerly v. Ithaca Coll., 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003).

## IV.   DISCUSSION

In deference to Plaintiff's pro se status and in the interest of complete review, the Court

will address all claims conceivably raised by the Complaint, including claims implied by the

allegations and claims that could be raised under the list of statutes provided by Plaintiff.[3] For

---

[3] Plaintiff appears to bring claims related to the legal theories of Fruit of the Poisonous Tree and
Equitable Estoppel. See Compl. at 10. "Fruit of the Poisonous Tree" is not a cognizable cause of
action and is instead a doctrine regarding evidence brought forth in criminal trials. See Utah v.
Strieff, 579 U.S. 232, 237 (2016) (discussing the evidentiary exclusionary rule). Similarly,
equitable estoppel is not a cause of action but rather an "extraordinary remedy" invoked to

the reasons that follow, all of Plaintiff's claims will be dismissed. However, some will be

dismissed with prejudice and some will be dismissed without prejudice and with leave to amend.

### A.  Claims Dismissed with Prejudice

> *1.  Claims Without a Private Cause of Action*

Defendants argue that Plaintiff lacks a private right of action to pursue claims under

many of the statutes cited. See Hosp. Mot. at 7; Union Mot. at 17–18. The Court agrees. See

Trombetta v. Novocin, No. 18-CV-993, 2024 WL 689144, at *6 (S.D.N.Y. Feb. 20, 2024)

(finding no private right of action under 18 U.S.C. § 1028); Futia v. Roberts, No. 23-CV-1774,

2023 WL 8237246, at *6 (S.D.N.Y. Nov. 28, 2023) (finding no private right of action under 18

U.S.C. §§ 241, 242, 1001, or 1341); Hart v. Janicki, No. 23-CV-832, 2023 WL 5630411, at *3

(W.D. Wa. Aug. 31, 2023) (finding no private right of action under 18 U.S.C. § 47); Johnson v.

Capital One Bank N.A., No. 22-CV-363, 2022 WL 1091226, at *1 (D.D.C. Apr. 12, 2022)

(finding no basis for inferring a civil cause of action for 42 U.S.C § 1307), rev'd in part on other

grounds, No. 22-CV-7042, 2023 WL 2733486 (D.C. Cir. Mar. 31, 2023); Miller v. Austin, No.

20-CV-1958, 2021 WL 1226770, at *4 (S.D.N.Y. Mar. 31, 2021) (finding no private right of

action under 28 U.S.C. § 1746); Oslzly v. Mendlewicz, No. 15-CV-5681, 2015 WL 7575902, at

*3 (E.D.N.Y. Nov. 25, 2015) ("However, there is no private right of action under HIPAA."

(citing Ames v. Group Health Inc., 553 F. Supp. 2d 187, 192 (E.D.N.Y. 2008))); Zahl v.

Kosovsky, No. 08-CV-8308, 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) (finding no

private right of action under 42 U.S.C. § 408).

---

prevent an individual from invoking a right against another party when the right arises out of that
party's misleading actions. See Endemann v. Liberty Ins. Corp., 602 F. Supp. 3d 322, 328
(N.D.N.Y. 2022). Therefore, neither doctrine is applicable to the civil complaint currently
pending before the Court.

As a private individual, Plaintiff cannot maintain a suit under these statutes regardless of any possible amendment. Accordingly, these claims are dismissed with prejudice.

2.   *Claims Requiring State Action*

Defendants also argue that several of the cited statutes only apply to governmental entities and thus cannot support claims against private individuals in civil cases. See Union Mot. at 15–17.  Defendants are correct. See Crawford v. Washington, 541 U.S. 36, 42 (2004) (noting that the Sixth Amendment right to confront one's accusers applies only to criminal prosecutions); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (finding that a Fifth Amendment due process claim cannot lie against a private actor unless the allegedly unconstitutional conduct is "fairly attributable to the State"); E.E.O.C. v. Am. Fed. State, Cnty., and Mun. Emps., AFL-CIO, 937 F. Supp. 166, 169 (N.D.N.Y. 1996) ("Similarly, Kelly does not state a claim under RFRA, as any government action alleged herein does not infringe plaintiff's religious freedoms. It is solely the actions of the unions, acting privately, which encroach upon Kelly's beliefs. This is not the type of governmental burdening of religious exercise sought to be eliminated by RFRA."); Pitt v. Matola, 890 F. Supp. 89, 91–92 (N.D.N.Y. 1995) ("Compensation under [FECA] is a federal employee's exclusive remedy against the government for injuries arising out of the course of federal employment" and does not apply to non-governmental employees).

Additionally, multiple statutes by their text apply only to specific government officials. See 5 U.S.C. § 3331 (requiring certain federal officials to swear an oath of allegiance to the Constitution of the United States); 28 U.S.C. § 534 (directing the Attorney General to maintain national crime information databases and related records). Since Plaintiff has not named any of

these specific individuals or entities as defendants or alleged that any of the existing named defendants are public officials, he has failed to state a claim under any of these statutes.

To the extent Plaintiff's allegation that he is "being charged under color of law," Compl. at 8, should be construed as a claim under 42 U.S.C. § 1983, those claims are similarly dismissed because of Plaintiff's failure to allege any state action. See West v. Atkins, 487 U.S. 42, 48–49 (1988) (finding that a person must be acting under color of state law to be liable under Section 1983 and that a person acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law"). Accordingly, to the extent that Plaintiff intends to allege any claims pursuant to Section 1983, those claims are also dismissed.

Plaintiff has not alleged that any of the defendants are governmental officials acting under color of state law or that he is being prosecuted in a criminal action by Defendants. Accordingly, Plaintiff's claims under these statutes are dismissed with prejudice.

### 3. Duty of Fair Representation

Plaintiff also appears to bring claims for breach of duty of fair representation against the Union Defendants for refusing to provide protection and failing to file a grievance on his behalf in 2021. See Compl. at 1, 2, 19. Those claims are dismissed with prejudice for failure to name the proper defendant.

To state a claim for breach of a union's duty of fair representation, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was 'a causal connection' between the union's wrongful conduct and the member's injuries." Watkins v. First Student, Inc., No. 17-CV-1519, 2018 WL 1135480, at *13 (S.D.N.Y. Feb. 28, 2018) (citing Perkins v. 199 SEIU United Healthcare Workers East, 73 F. Supp. 3d 278, 283–84

(S.D.N.Y. 2014)). There is no breach of this duty "where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153–54 (2d Cir. 1994). Individual union members are not subject to liability in suits for breach of the duty of fair representation. See Cunningham v. Figurilli, No. 12-CV-598, 2013 WL 592673, at *4 (N.D.N.Y. Feb. 14, 2013) (citing Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999)). Claims alleging a union failed to abide by their duty of fair representation are subject to a six-month statute of limitations. See Perkins, 73 F. Supp. 3d at 285 (citing White v. White Rose Food, 128 F.3d 110, 114 (2d Cir. 1997)).

Plaintiff does not name his union as a defendant in this action; instead, he names multiple individual representatives of the union. Since these individuals are shielded from liability, these claims are dismissed. Insofar as Plaintiff wishes to pursue these claims against his union, he may choose to amend his Complaint to seek relief from union itself and not from the individual Union Defendants. However, Plaintiff is warned that, in order to comply with the six-month statute of limitations, any amended claims must relate to events that occurred no more than six months prior to the filing of this case.

### 4. Title VII

While Plaintiff does not explicitly name Title VII in his complaint, his allegations of discrimination on the basis of race and religion, and related retaliation, are best assessed as violations of Title VII. See Hosp. Mot. at 11–20 (construing Plaintiff's claims as brought under Title VII).

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e–2000e-17. To state a claim for discrimination on the basis

of race, national origin, or religion, a plaintiff must allege that (1) they are a member of a

protected class; (2) they were qualified for their position or performing their job in a satisfactory

manner; (3) they suffered an adverse employment action; and (4) the adverse employment action

took place in such a way as to give rise to an inference of discrimination. See Vega v. Hempstead

Union Free School Dist., 801 F.3d 72, 83 (2d Cir. 2015) (detailing the test for a discrimination

claim). To state a claim for retaliation under Title VII, a plaintiff must demonstrate (1) that they

were engaged in protected activity; (2) the employer was aware of that activity; (3) the employee

suffered a materially adverse action; and (4) there was a causal connection between the protected

activity and the adverse action. See Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)

(detailing the test for a retaliation claim). Individuals are not subject to liability under Title VII;

rather, Title VII claims must be brought against the employer. See Wrighten v. Glowski, 232

F.3d 119, 120 (2d Cir. 2000) ("The district court also properly dismissed the Title VII claims

against [individual defendants], because individuals are not subject to liability under Title VII.").

A plaintiff has up to 180 days after the alleged incident to file a charge with the Equal

Employment Opportunity Commission ("EEOC"), 42 U.S.C § 2000e-5(e)(1), and 90 days to file

a civil action after a Notice of Right to Sue has been issued by the EEOC. Id. at § 2000e-5(f)(1).

As a preliminary matter, Plaintiff does not name his employer, Montefiore New Rochelle

Hospital, in the Complaint as a defendant. Since claims under Title VII cannot lie against

individual defendants, those claims are dismissed with prejudice. While Plaintiff may replead his

allegations for discrimination and retaliation if he chooses to add his employer as a defendant, he

is advised of the pleading requirements for a claim under Title VII listed above and the

applicable statute of limitations.

5.  *Statutes Not Addressing Employment*

Additionally, Plaintiff includes several statutes that are facially inapplicable to the facts plead. Accordingly, all claims brought under these statutes will be dismissed for failure to state a claim.

In his Complaint, Plaintiff names the 1968 Civil Rights Act Sec. 201, 25 U.S.C. §§ 1301–1305. Compl. at 8. However, since that statute governs crimes committed on Indian Reserves, and Plaintiff does not allege crimes that occurred on native land, claims under this statute are dismissed. Similarly, Plaintiff names the Fair Housing Act, 42 U.S.C. § 3617. See Compl. at 8. However, none of the employment issues raised in the Complaint are related to discrimination in housing. Accordingly, Plaintiff's claims under this statute are dismissed. Plaintiff also names the Stop Terrorist and Military Hoaxes Act, which criminalizes the provision of false or misleading information under circumstances that constitute numerous predicate criminal acts. 18 U.S.C. § 1038. Leaving aside the open question of whether Plaintiff could bring a private claim under this statute, Plaintiff includes no allegations related to the types of weapons contemplated by the statute—much less to the provision of information of false information relating to these weapons. See Iannacone v. Corporation, No. 22-CV-695, 2022 WL 17820184, at *2 (N.D.N.Y. Jul. 29, 2022) (finding that, while Section 1038 does appear to provide for a similar right of action in some limited circumstances, "the Complaint is devoid of any factual allegations that would support a claim under the statute"). As such, any claims predicated on this statute are dismissed.

While claims are normally dismissed with leave to amend, given the fact that Plaintiff would be unable to amend his complaint to state claims under these statutes, these claims are dismissed with prejudice.

### 6. Hospital Policy

Plaintiff also sues pursuant to his employer's non-discrimination and anti-harassment policy. See Compl. at 7; see also Montefiore Hospital Policy Number VI-6 ("Policy"), at 1–7 (discussing Montefiore Medical Center's internal support for the creation of "an environment free from discrimination, unlawful harassment (including sexual harassment), and other harassing behavior"). While some failures to abide by employer policy are actionable in federal court, see, e.g., Langenkamp v. Olson, 628 F. App'x 50, 53 (2d Cir. 2015) (evaluating breach-of-contract claim that flowed from an employer's failure to comport with termination policies in the employer handbook because "she alleges much more than the 'mere existence of a written policy'"), this Court has found no instance of a case in which a plaintiff was able to sue their employer for failure to follow employer policies absent external statutes or tort claims. Since Plaintiff has not alleged the Policy constituted a contract between Plaintiff and any of the named defendants, any claim for breach of contract flowing from the hospital policy is dismissed.

Such a claim could be construed as a breach of contract claim under a theory of promissory estoppel for failure to investigate Plaintiff's complaints regarding alleged discrimination on the basis of race and religion. "In New York, promissory estoppel has three elements: 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance.'" Cyberchron Corp. v. Calldata Systems Development, Inc., 47 F.3d 39, 44 (2d Cir. 1995). Plaintiff has not alleged any of these three elements in his Complaint, and there is nothing in the policy to suggest any "clear and unambiguous promise" made to Plaintiff. See Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 254 (D. Conn. 2008) ("The policy at issue in this case is at the most a statement of intention or an articulation of company goals and objectives, and cannot give rise to liability under a theory of promissory

estoppel." (cleaned up)) (collecting cases). Since no intuitive reading of the underlying policy

includes any promise broken by Defendants, Plaintiff has not stated a claim for promissory

estoppel.

### B. Claims Dismissed without Prejudice

#### 1. Disability

Plaintiff lists multiple statutes related to disability. None of them support a cognizable

claim here. Plaintiff cites to the Americans with Disabilities Act, 28 C.F.R. § 36.302(c), but

doesn't allege that he has any disability or condition that would be protected under the ADA. See

Compl. at 8. He similarly does not allege that he has applied for supplemental security benefits

or otherwise sought government benefits, so any claims brought under 42 U.S.C. § 1383 are also

dismissed for failure to state a claim. See Oslzly, 2015 WL 7575902, at *3 (dismissing claim

filed under 42 U.S.C. § 1383(c) because plaintiff made no mention of the award of benefits). For

these reasons, Plaintiff's claims under these statutes are dismissed.

#### 2. ERISA Claims

Plaintiff also brings a claim under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001–1461. See Compl. at 7. Specifically, Plaintiff states that ERISA

"is being violated by falsely denying claimant did not [begin] employment at said time (1988)

claimant did [prove] his employment did actually start in 1988, attempting to intentionally delete

ten years of claimant's employment history by stating claimant began employment in 1998." Id.

ERISA sets minimum standards for voluntarily established retirement and health plans in

the private sector and creates fiduciary responsibilities for plans and plan administrators as to

participants and beneficiaries of those plans. When filing a civil enforcement action, participants

or beneficiaries commonly sue to obtain benefits due under an ERISA plan, see 29 U.S.C. § 1132

(a)(1)(B), enjoin a practice that violates ERISA or obtain other appropriate equitable relief to address these violations, see id. at § 1132(a)(3), or receive requested documents related to the plan, see id. at § 1132(c)(1)(b). Participants or beneficiaries may also sue plans or plan administrators for breach of fiduciary duties. See Harrison v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) ("ERISA provides a civil enforcement remedy for the conduct upon which [plaintiff] bases her . . . breach of fiduciary duty claims." (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 214–15 (2004))).

It is not precisely clear which section of ERISA applies to Plaintiff's claims. He alleges that his employment history was incorrectly documented, though he does not say by whom or to what effect. See Compl. at 7. He does not state that he is not receiving benefits he is entitled to, that he has not received a particular requested document, or that a fiduciary duty has been breached. Indeed, it is not even clear from the pleadings whether Plaintiff is a participant in a pension plan covered by ERISA or that one of the named defendants is a plan administrator liable for violations under ERISA. See Thomas v. Cigna Group Ins., No. 09-CV-5029, 2013 WL 12084484, at *13 (E.D.N.Y. Jan. 10, 2013) (discussing appropriate defendants for ERISA actions). Given these deficiencies, Plaintiff's claims under ERISA are dismissed for failure to state a claim under which relief can be granted.

### 3.   The Fair Labor Standards Act

Plaintiff also includes the FLSA, 29 U.S.C. §§ 201–19, in his Complaint. See Compl. at 7. The FLSA establishes requirements for minimum wage, overtime pay, recordkeeping, and other employment standards. See 29 U.S.C. §§ 206, 207, 211. The FLSA also makes it unlawful to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." Dunn v. Sederakis, 143

F. Supp. 3d 102, 109 (S.D.N.Y. 2015); see also Greathouse v. JHS Sec. Inc., 784 F.3d 105, 111–17 (2d. Cir. 2015) (describing standards for retaliation claims brought under FLSA).

      Plaintiff does not allege any claims related to his hourly wages or paid overtime, nor does he allege he was retaliated against for filing a complaint regarding wages or overtime. To the extent he alleges claims flowing from a breach of his contract or collective bargaining agreement, those claims are not cognizable under the FLSA. See Rogers v. City of Troy, N.Y., 148 F.3d 52, 57 (2d Cir. 1998) ("Parties may, of course, contract for additional rights above those guaranteed by the statute. But the existence of the FLSA does not convert every suit involving the breach of an employment contract into a federal case."); Momin v. Quantierra Advisors LLC, No. 21-CV-612, 2022 WL 2002282, at *2 (S.D.N.Y. Jun. 3, 2022) (finding that employees cannot use the FLSA to pursue breach of contract claims) (collecting cases). Accordingly, Plaintiff's claims under the FLSA are dismissed.

### C. Supplemental Jurisdiction

      Plaintiff also brings several claims under state law. However, as discussed above, all of Plaintiff's federal claims have been dismissed either with or without prejudice. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

      While federal courts normally lack subject matter jurisdiction over state law claims, district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988) (noting "that in the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

Given the sparse nature of the Complaint, it is not entirely clear to what extent the Court would have supplemental jurisdiction at all: of the thirty-five statutes named, only some address overlapping issues of the law—much less overlapping alleged facts. Additionally, the early stage of litigation weighs in favor of declining to exercise supplemental jurisdiction. See Schiebel v. Schoharie Central School, --- F. Supp. 3d ---, 2023 WL 4305215, at *7 (N.D.N.Y. Jun. 30, 2023) (Kahn, J.) ("Courts in this Circuit have noted that when a case is early in the early phases of litigation and has yet to enter discovery, the aforementioned balancing factors weigh heavily against exercising supplemental jurisdiction.") (collecting cases). This case has not proceeded beyond a motion to dismiss. Further, there is nothing to suggest that litigation in front of this Court would be a more appropriate use of judicial time and resources or that parties would face unfairness in front of the state court: indeed, Plaintiff's original preference was to pursue this claim in state court.

Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. These claims are those brought under New York Penal Law §§ 240.20, 240.30, 485.00, 485.05; New York Executive Law §§ 290, 292, and 296; N.Y. Gen. Mun. Law § 99-x[4]; Hate Crime Local Law 46; and the state laws governing breach of contract and the torts of fraud, assault,[5] and intentional infliction of emotional distress. The Court may revisit these state law

---

[4] In his Complaint, Plaintiff cites to the unenacted text of this law, Senate Bill S4615A.

[5] In his Complaint, Plaintiff alleges "threats of physical bodily harm, threats of gun violence towards claimant, [and] workplace violence." Compl. at 1, see id. at 6 ("Alicia M. Monteque . . . then aggressively began to attack claimant verbally, placing claimant in imminent danger by

claims and choose to exercise supplemental jurisdiction if Plaintiff files an amended complaint alleging a viable claim under federal law and includes related state law claims, or if parties are able to establish the existence of complete diversity for the purposes of diversity jurisdiction. If Plaintiff does not file an amended complaint correcting the pleading deficiencies related to his federal claims within the time specified by this Memorandum-Decision and Order or if parties do not establish the existence of diversity jurisdiction, the remainder of this case will be remanded to state court for further proceedings. See Cohill, 484 U.S. at 357 ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

### D.  Additional Defendants

While the Hospital Motion and Union Motion address the claims brought against seven of the defendants, the remaining ten defendants have not entered an appearance or responded to the action.

The Union Motion was brought on behalf of Brenda Spry, Hazel Green, and Maxine Hewitt, but Plaintiff also named five other union members and/or representatives in his Complaint. Those defendants are Brandon Stolz, Amede Melice, Everton Forbes, Ana Smith Davis, and Enver Kotenovic. See Union Mot. at 7 n.1. Defendants Spry, Green, and Hewitt aver that those five defendants have not yet been served with the Complaint. See id. Similarly, while the Hospital Motion was brought on behalf of Melissa Monroy, Edwin Rivera, Paola Rosa, and Emy Valez, Plaintiff names fellow hospital employee Monteque in the Complaint. See Compl. at

---

confronting claimant, threatening claimant, attempting to physically assault claimant."). The Court construes this pleading as an allegation of the common law tort of assault.

1. It is unclear how Sandra B. Port, Amely Janet, Joseph Ricci, and Jasmine Wilson are affiliated with the allegations described in the Complaint.

Service of process in this District is governed by Federal Rule of Civil Procedure 4 and Local Rule 4.1. Under Rule 4, a plaintiff must demonstrate proof of service to the court by providing the server's affidavit. Fed. R. Civ. P. 4(l)(1). If a defendant is not served within sixty days of the filing of the complaint, the court must dismiss the action without prejudice against that defendant or order that service be made within a specified time; the court may do so "on motion or on its own after notice to the plaintiff." Fed. R. Civ. P. 4(m); L.R. 4.1(B). In removed cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. "Rule 4(m)'s [time] period for service begins to run on the date of removal." Lynch v. County of Herkimer, No. 20-CV-63, 2020 WL 13915508, at *3 (N.D.N.Y. Mar. 27, 2020) (citing G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)). A motion to dismiss for insufficient service of process must be asserted by motion before pleading. See Fed. R. Civ. P. 12 (finding procedural defenses are waived if omitted from a pleading or pre-answer motion).

Plaintiff has not provided the affidavit required to demonstrate he had served all Defendants. Plaintiff is directed to provide an affidavit demonstrating that Defendants Brendan Stolz, Amede Melice, Everton Forbes, Ana Smith Davis, Enver Kotenovic, Monteque, Sandra B. Port, Amely Janet, Joseph Rice, and Jasmine Wilson were served with the Complaint.[6] If

---

[6] Since Defendants Valez, Rivera, Rosa, Monroy, Spry, Green, and Hewitt have not contested service in their motions to dismiss, they have waived the defense of insufficient process of service under Rule 12(b)(5).

Plaintiff cannot do so, Plaintiff's claims against these defendants will be dismissed. However, he may bring these defendants into the lawsuit in conformity with Rule 4 if he files an amended complaint. Accordingly, the Court extends the deadline for service of a summons and complaint to sixty days after the filing of an amended complaint.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Monroy, Rivera, Rosa, and Valez's Motion to Dismiss, Dkt. No. 16, is **GRANTED**; and it is further

**ORDERED**, that federal claims against Monroy, Rivera, Rosa, and Valez discussed in Section IV.A are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Green, Hewett, and Spry's Motion to Dismiss, Dkt. No. 17, is **GRANTED**; and it is further

**ORDERED**, that the federal claims against Green, Hewett, and Spry discussed in Section IV.A are **DISMISSED with prejudice**; and it is further

**ORDERED**, that federal claims against Janet, Stolz, Port, Melice, Forbes, Smith Davis, Wilson, Rice, and Kotenovic are **DISMISSED without prejudice** for failure to prove service; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an amended complaint within sixty (60) days from the filing date of this Memorandum-Decision and Order. Plaintiff is advised that an amended complaint will supersede the current Complaint and thus must be a complete document that does not incorporate the current Complaint by reference; and it is further

**ORDERED**, that Plaintiff must provide proof that service was made on Defendants Stolz, Melice, Forbes, Smith Davis, Kotenovic, Monteque, Port, Janet, Ricci, and Wilson. If he cannot do so, claims against these Defendants will be dismissed. Plaintiff may have an extension of the time period in which to effect service if he files an amended complaint and must serve these Defendants within sixty (60) days of the filing of his amended complaint; and it is further

**ORDERED**, that if Plaintiff does not timely file an amended complaint, Plaintiff's state law claims will be dismissed for lack of subject matter jurisdiction without further order of the Court and the remainder of this action will be remanded to the Supreme Court of the State of New York, Ulster County, for further proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 28, 2024
            Albany, New York

LAWRENCE E. KAHN
United States District Judge